

# SUPREME COURT OF MISSOURI
## en banc

NINA THEROFF,            )      *Opinion issued January 14, 2020*
                                )
         Respondent,       )
                                )
v.                               )      No. SC97235
                                )
DOLLAR TREE STORES, INC.     )
AND JANIE HARPER,         )
                                )
         Appellants.        )

## APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY
### The Honorable Patricia S. Joyce, Judge

Dollar Tree Stores, Inc., and Janie Harper (collectively, "Dollar Tree") appeal from the circuit court's order overruling their motion to compel arbitration on their former employee's claim of disability discrimination. The former employee, Nina Theroff, and Dollar Tree disputed whether there was assent to the arbitration agreement. Before the circuit court could rule on Dollar Tree's motion to compel arbitration, it was required to find whether there was an agreement to arbitrate. The circuit court heard testimony from both Theroff and Dollar Tree representatives. The circuit court's order stated, in full, "Motion to compel arbitration and stay proceedings is hereby denied." Although the circuit court did not make any findings of fact, its determination of the

witnesses' credibility must be given deference. Considering this, nothing suggests the order was not supported by substantial evidence, was against the weight of the evidence, or erroneously applied the law. The circuit court's order overruling Dollar Tree's motion to compel arbitration and stay proceedings is affirmed.

**Background**

Theroff alleged Dollar Tree constructively discharged her by refusing her request for a reasonable accommodation – allowing her service dog to accompany her. She filed charges with the Missouri Commission on Human Rights against Dollar Tree for discrimination based on disability and received a notice of right to sue letter. Theroff filed a petition in the circuit court asserting a single claim of disability discrimination under the Missouri Human Rights Act against Dollar Tree. Dollar Tree filed a motion to compel arbitration and stay proceedings. The circuit court held an evidentiary hearing on the motion to compel at which the following evidence was adduced:

Theroff applied for employment at a Dollar Tree store. During Theroff's interview with the store's assistant manager, Kayla Swift, Theroff informed Swift she was legally blind and used various assistive devices. Swift hired Theroff and directed her to return to complete paperwork. Theroff returned to Dollar Tree two days later to complete the hiring paperwork electronically. One of the documents bearing Theroff's digital signature was a mutual agreement to arbitrate claims. The arbitration procedures outlined in the mutual agreement specified that JAMS employment arbitration rules and procedures controlled. JAMS Rule 11(b) provides that the arbitrator has authority to determine jurisdictional and arbitrability disputes.

2

There was conflicting evidence about Theroff's knowledge of the existence of the mutual agreement and her electronic signature on it. According to Theroff, when she returned to complete the hiring paperwork, she did not know the hiring process would occur on a computer, and she only brought a small magnifier. After informing Swift that using the magnifier on the computer screen would take some time, Swift offered to assist Theroff. Without being able to see content on the computer screen, Theroff asserted that Swift prompted her for certain information: "I need your address here. I need your phone number here, your name here. This is a standard document. Just hit enter. It's just normal employment things." Theroff claimed that the two sat on either side of the keyboard and that Swift kept control until Swift thought it would be quicker for Theroff to enter information such as an account or phone numbers. The entire process took about 30 minutes. Theroff indicated Swift never mentioned arbitration, waiver of a jury trial, or JAMS rules.

Swift disputed that she helped Theroff navigate the electronic documents. She also disputed that Theroff was legally blind or that Theroff told her she had any vision issues requiring assistive devices. Swift stated that she did not electronically sign the mutual agreement for Theroff and that she did not field any questions from Theroff concerning the mutual agreement.[1] Inconsistencies in Swift's awareness of facts surrounding Theroff's hiring were brought out during questioning. Following the

---

[1] The store's manager, Janie Harper, also testified, although she was not involved in Theroff's hiring. Harper asserted that, if an applicant had trouble seeing or reading the screen during the hiring process, she would have read the material to the applicant.

3

evidentiary hearing, the circuit court overruled the motion without making any findings. Dollar Tree appeals.[2]

## Standard of Review

When there are factual disputes regarding the existence of an arbitration agreement, the circuit court shall conduct an evidentiary hearing to determine whether an arbitration agreement exists. *See* section 435.355.1;[3] *Nitro Distrib., Inc. v. Dunn*, 194 S.W.3d 339, 352 (Mo. banc 2006). An appellate court's "review of the [circuit] court's determination as to the existence of an agreement itself is analogous to that in a court-tried case." *Kunzie v. Jack-In-The-Box, Inc.*, 330 S.W.3d 476, 480 (Mo. App. 2010). As such, in an appeal from a circuit court's order overruling a motion to compel arbitration when there is a dispute as to whether the arbitration agreement exists,[4] the circuit court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *See Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

---

[2] After an opinion by the court of appeals, this Court granted transfer. Mo. Const. art. V, sec. 10.
[3] All statutory references are to RSMo 2016, unless otherwise noted. The procedure Missouri courts follow is set out in the Missouri Uniform Arbitration Act (MUAA). *Dunn*, 194 S.W.3d at 351 (Mo. banc 2006). The relevant MUAA procedure, found in section 435.355.1, provides:
> On application of a party showing an agreement described in section 435.350, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party *denies the existence of the agreement to arbitrate*, the court shall *proceed summarily* to the determination of the issue so raised and shall order arbitration if found for the moving party; otherwise, the application shall be denied.

(Emphasis added).
[4] Section 435.440.1(1) provides that a party can appeal "[a]n order denying an application to compel arbitration made under section 435.355." "The appeal shall be taken in the manner and to the same extent as from orders or judgments in a civil action." Section 435.440.2.

4

If there is no factual dispute about the existence of an arbitration agreement, the overruling of a motion to compel arbitration is reviewed *de novo*. *Soars v. Easter Seals Midwest*, 563 S.W.3d 111, 113 (Mo. banc 2018). "An appellate court's review of the arbitrability of a dispute is de novo" because "[w]hether a dispute is covered by an arbitration provision is relegated to the courts as a question of law." *Dunn Indus. Grp., Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 428 (Mo. banc. 2003). Likewise, this "Court reviews *de novo* the *legal issue* of whether a valid, enforceable delegation clause exists within an arbitration agreement." *State ex rel. Newberry v. Jackson*, 575 S.W.3d 471, 474 (Mo. banc 2019) (emphasis added). Because contract interpretation is a question of law, *State ex rel. Pinkerton v. Fahnestock*, 531 S.W.3d 36, 44 (Mo. banc 2017), a *de novo* standard of review is appropriate for appellate review of a denial of a motion to compel arbitration when a court must analyze the terms of an arbitration agreement.

**Analysis**

### I. Existence of the agreement to arbitrate is a prerequisite to compelling arbitration

Dollar Tree asks this Court to analyze the record to determine whether the circuit court found by a preponderance of evidence[5] that Theroff signed the mutual agreement. Dollar Tree maintains that, if so, the circuit court had no choice but to delegate all challenges to the arbitrator. Theroff argues she did not "sign" the agreement because (1) she did not authorize Swift to make the operative click, and (2) even if it was Theroff who clicked, Swift did not inform her of the existence of the arbitration agreement, which Theroff could not view or read. Dollar Tree maintains Theroff had knowledge of the mutual agreement and signed it.

The outcome of this case turns on the circuit court's factfinding role, including its assessment of witnesses. When the parties challenge facts relevant to a particular issue, as they did here, this Court will defer to the circuit court's assessment of the evidence. *White v. Dir. of Revenue*, 321 S.W.3d 298, 308 (Mo. banc 2010). With no written findings of fact, this Court views the facts "as having been found in accordance with the result reached." Rule 73.01(c). In addition, this Court must "give due regard to the opportunity of the [circuit] court to have judged the credibility of witnesses[.]" Rule 84.13(d)(2).

---

[5] Dollar Tree incorrectly characterizes the standard of review. As provided above, the circuit court's judgment will be affirmed unless there is no *substantial evidence* to support it. *See Murphy*, 536 S.W.2d at 32.

Although Dollar Tree and Theroff do not dispute that the mutual agreement contains an electronic signature, the issue here is whether the mutual agreement to arbitrate existed per section 435.355.1, as Theroff asserts she did not assent to it. "[A]rbitration is a matter of contract." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). At the most fundamental level, assent is required for a contract or an agreement to exist. *Green v. Cole*, 15 S.W. 317, 318 (Mo. 1891) ("It is a well[-]settled principle of law that to constitute a contract[,] the minds of the parties must assent to the same thing in the same sense.").

This case presents facts raising an issue of first impression for this Court – the question of whether there was, in the first instance, assent to the arbitration agreement. Unlike the standard scenario in which there is no dispute about whether a party signed an arbitration agreement, when a party disputes signing, the court must first decide the existence of an agreement to arbitrate. *See Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851, 854 (11th Cir. 1992) (noting the court is responsible for deciding in the first instance whether a party who did not sign an arbitration agreement can be bound to arbitrate because "that party is challenging the very existence of *any* agreement, *including the existence of an agreement to arbitrate*") (abrogated on other grounds by *Larsen v. Citibank FSB*, 871 F.3d 1295, 1303 n.1 (11th Cir. 2017)). *Newberry*, *Soars*, and *Pinkerton*, cases on which the dissenting opinions rely, are dissimilar. There were no disputes regarding assent to the agreement; rather, the challenges were to the agreements' validity. *Newberry*, 575 S.W.3d at 473 ("Fearing loss of employment, Mr. Newberry and Ms. Lowrance electronically signed their agreements . . . ."); *Soars*, 563 S.W.3d at 113

7

("Soars signed the Agreement as a condition of his employment . . . . Soars was made aware his employment . . . was conditioned upon him signing the Agreement."); *Pinkerton*, 531 S.W.3d at 41 ("Mr. Pinkerton signed the enrollment agreement and received a copy. An admissions representative and another school official also signed the agreement."). As *Newberry*, *Soars*, and *Pinkerton* presumed an arbitration agreement existed, these cases did not address the situation in which a party claimed she did not assent to an arbitration agreement in the first instance, which are the facts here.

Theroff, unlike the plaintiff in *Soars* and the relators in *Newberry* and *Pinkerton*, challenges the existence of any agreement.[6] Although Theroff did not expressly cite

---

[6] The dissenting opinion of Judge Fischer takes issue with the concept of contract "conclusion." "Issues as to whether a contract has been 'concluded' include whether: a contract was signed by the obligor, a signor lacked authority to sign a contract to commit a principal, or a signor lacked the mental capacity to sign a contract." *Pinkerton*, 531 S.W.3d at 49 n.9 (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006)).

Although an isolated sentence of dicta in *Pinkerton* may be read to suggest that the terms "concluded" and "formed" are interchangeable, *see Pinkerton*, 531 S.W.3d at 49 ("[A] court must be satisfied that the parties have *'concluded' or formed* an arbitration agreement before the court may order arbitration to proceed according to the terms of the agreement." (emphasis added)), other portions of *Pinkerton* and governing case law in which the existence of a contract was at issue demonstrate they are not. As *Pinkerton* went on to explain, formation and enforceability issues may be delegated to the arbitrator; issues of whether a contract was ever concluded generally may not. *Id.* To the extent *Pinkerton* may be read as making synonymous whether a contract is (1) "concluded" or (2) formed, *Pinkerton* makes clear these terms are different.

On this point, the principal opinion maintains a distinction that has existed since *Buckeye Check Cashing, Inc. v. Cardegna* – that whether any agreement has ever been *"concluded"* is distinct from a contract's *validity*. 546 U.S. at 444 n.1. The specific issues of assent raised in *Buckeye* and repeated in *Pinkerton* are in accord with section 435.355.1's requirement of determining "the existence of the agreement to arbitrate." An agreement is merely "a manifestation of mutual assent" between parties. Restatement (Second) of Contracts § 3 (Am. Law Inst. 1981). Because the issue here is whether Theroff signed the agreement, the existence of the arbitration agreement was for the circuit court to decide; it found the agreement did not exist.

section 435.355.1 in challenging "the existence of the agreement to arbitrate," her assertions that she did not see, read, know of, or assent to the arbitration agreement are, in effect, a challenge to the agreement's existence.[7] "The existence of a contract necessarily implies there has been a 'meeting of the minds' between the parties." *Arrowhead Contracting, Inc. v. M.H. Washington, LLC*, 243 S.W.3d 532, 535 (Mo. App. 2008). Theroff's argument that assent, or meeting of the minds, did not occur is a challenge to the agreement's existence, and existence of the agreement to arbitrate is a prerequisite to compelling arbitration.

---

*Soars*, as Judge Fischer's dissenting opinion recognizes, yet glosses over, concerned a lack of consideration. Slip op. at 2 n.1. This is a validity issue. The parties in *Soars* did not contest the bedrock principle of assent. 563 S.W.3d at 114 ("The parties *expressly agreed* to give an arbitrator 'exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation,' and the question now is whether the Agreement was validly reached." (emphasis added)). It is worth noting that the court of appeals' unpublished memorandum opinion, to which Judge Fischer cites, is not correctly using the concept of whether a contract was concluded. Consideration is irrelevant to assent and to any signing issue. (It is also worth noting that an unpublished memorandum opinion is for the parties and should not find its way to an official reporter).

[7] The dissenting opinion of Judge Powell argues that this principal opinion "conflates the concept of 'existence,' as that term is used in section 435.355.1, with the concept of contract 'formation.'" Slip op. at 7-8 n.5. Judge Powell's dissenting opinion conveniently utilizes the dictionary definition of "existence." *Id.* It should have substituted that definition into section 435.355.1 to read as follows: "[I]f the opposing party denies the [actual or present occurrence] *of the agreement* to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party; otherwise, the application shall be denied." (Emphasis added). Judge Powell's dissenting opinion inaccurately concludes a party can merely present an instrument with a purported signature to satisfy section 435.355.1. Such a superficial analysis deprives a court of any meaningful "determination of the issue so raised." When Theroff alleged she was not involved in the procurement of her electronic signature, the circuit court was entitled to find, as an issue of fact, that there was not an actual or present occurrence of any agreement to arbitrate.

By ruling in Theroff's favor and overruling the motion to compel arbitration, the circuit court, after reviewing all the evidence, impliedly found there was no agreement.[8] The circuit court made no express findings of fact or law addressing whether Theroff signed the mutual agreement; the order simply stated, "Motion to compel arbitration and stay proceedings is hereby denied." The circuit court could have believed Theroff's account that she could not see the screen, was not able to view or read the arbitration agreement on her own because she did not have the proper assistive device, or did not know the arbitration agreement was included in the onboarding material through which Swift verbally guided her. Considering the due regard owed to the circuit court's assessment of credibility of the witnesses under the standard of review, this Court cannot say otherwise. Nothing suggests the order overruling the motion to compel arbitration was not supported by substantial evidence, was against the weight of the evidence, or was the result of an erroneous application of the law. *See Murphy*, 536 S.W.2d at 32. The order overruling Dollar Tree's motion to compel arbitration and stay proceedings is affirmed.

---

[8] The dissenting opinion of Judge Powell asserts the existence of the electronic signature on the mutual agreement is prima facie evidence of the existence of a contract between Theroff and Dollar Tree. Theroff put forth evidence, pursuant to section 435.355.1, persuading the circuit court the agreement did not exist. Again, this Court must view the facts "as having been found in accordance with the result reached." Rule 73.01(c). If section 435.355.1 is to be of any effect, it must be that a party can contest the existence of the agreement, as Theroff did here.

## II. In the absence of an agreement, a delegation provision is not effective

Parties can agree to arbitrate "gateway" questions of "arbitrability," including whether the parties have agreed to arbitrate a given controversy. *Newberry*, 575 S.W.3d at 474. Contractual arrangements to arbitrate gateway questions of arbitrability occur when the parties include a "delegation provision" in the arbitration agreement. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). "[A] delegation provision is an additional, severable agreement to arbitrate threshold issues that is valid and enforceable unless a specific challenge is levied against the delegation provision." *Pinkerton*, 531 S.W.3d at 50 (citing *Rent-A-Ctr., W., Inc.*, 561 U.S. at 71). When evaluating the intention of parties to delegate threshold arbitrability issues to the arbitrator, "'[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is clea[r] and unmistakabl[e] evidence that they did so.'" *Id.* at 43 (alterations in original) (quoting *Rent-A-Ctr., W., Inc.*, 561 U.S. at 69 n.1).

To the extent *Newberry*, *Soars*, and *Pinkerton* can be read to suggest one can be forced into arbitration by a contract to which one is a stranger, this interpretation is incorrect. This is evident in *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 402 (1967), in which the Supreme Court held a court, before determining arbitration issues, must determine "that the contract in question is within the coverage of the Arbitration Act." The Supreme Court recently noted that, "[w]hile a court's authority under the Arbitration Act to compel arbitration may be considerable, it isn't unconditional." *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 537 (2019). A court should determine if the contract in question falls within the coverage of the arbitration act *before*

11

applying the act's severability principle, requiring a challenge to an arbitration agreement, or delegation provision, separate from a challenge to the overall contract. *Id.* at 538. Here, there simply was no agreement of the parties to arbitrate in the first instance when one party, as the circuit court found, did not agree to arbitrate at all.

Theroff's challenge to the existence of the mutual agreement in its entirety because of a lack of assent necessarily challenges the existence of any delegation provision it contains.[9] Theroff denied the existence of the agreement to arbitrate under section 435.355.1, convincing the circuit court the agreement did not exist. It follows that there is not clear and unmistakable evidence of the existence of assent to a delegation provision. Under these facts, the circuit court cannot delegate the matter to an arbitrator whose very existence depends upon an agreement. The circuit court acted in accordance with section 435.355.1.

---

[9] The dissenting opinion of Judge Powell argues Theroff's lack of assent to the arbitration agreement "has no bearing on the existence of the agreement." Slip op. at 6. In support, the dissenting opinion cites two cases, both of which emphasize that "a signer's failure to read or understand a contract is not, standing alone, a defense to the contract." *Robinson v. Title Lenders, Inc.*, 364 S.W.3d 505, 509 n.4 (Mo. banc 2012) (citing *Sanger v. Yellow Cab Co., Inc.*, 486 S.W.2d 477, 481 (Mo. banc 1972)). These cases can be distinguished from the instant case, as neither involved a party challenging the existence of the contract itself. *See Robinson*, 364 S.W.3d at 517-18 (reversing and remanding for the circuit court to consider whether the arbitration agreement was unenforceable based on arguments of unconscionability); *Sanger*, 486 S.W.2d at 481 (holding no mutual mistake existed when the plaintiff had the ability to read the contract and was not pressured, rushed, or denied the opportunity to read it). Theroff's visual impairment caused her to have no knowledge of any arbitration agreement. Inherent in the circuit court's order is that Theroff did not sign the agreement and did not authorize anyone to sign it on her behalf. This is not the case of a signer's failure to read or understand a contract. This is a case of a party being unaware of the existence of any arbitration agreement.

**Conclusion**

The order overruling Dollar Tree's motion to compel arbitration and stay proceedings is affirmed.

_____
Mary R. Russell, Judge

Draper, C.J. and Stith, J., concur;
Breckenridge, J., concurs in separate opinion filed;
Powell, J., dissents in separate opinion filed;
Fischer, J., dissents in separate opinion filed;
Wilson, J., concurs in the opinions of Powell and Fischer, JJ.


NINA THEROFF,       )
           )
    Respondent,   )
           )
v.           )  No. SC97235
           )
DOLLAR TREE STORES, INC.   )
AND JANIE HARPER,     )
           )
    Appellants.    )

## CONCURRING OPINION

I concur in the principal opinion but write separately to address Dollar Tree's and the dissenting opinions' arguments that this Court's and the United States Supreme Court's precedent compel this Court to reverse the circuit court's overruling of Dollar Tree's motion to compel arbitration because Nina Theroff did not separately challenge the delegation clause in the arbitration agreement. The principal opinion is correct that this Court did not adjudicate a challenge to the existence of an arbitration agreement in *State ex rel Pinkerton v. Fahnestock*, 531 S.W.3d 36 (Mo. banc 2017), *Soars v. Easter Seals Midwest*, 563 S.W.3d 111 (Mo. banc 2018), or *State ex rel. Newberry v. Jackson*, 575 S.W.3d 471 (Mo. banc 2019). And, as this Court has held countless times, an opinion is limited by the issues before the Court and any holdings beyond those necessary to decide

the issues are *dicta*. *Brooks v. State*, 128 S.W.3d 844, 852 n.1 (Mo. banc 2004) ("[S]tatements . . . are obiter dicta [if] they [are] not essential to the court's decision of the issue before it." (alterations in original) (quoting *Richardson v. QuikTrip Corp.*, 81 S.W.3d 54, 59 (Mo. App. 2002)).

Nevertheless, the holdings of the United States Supreme Court in *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010), that were quoted in *Pinkerton*, *Soars*, and *Newberry* were broad enough to imply that the failure of a party to separately challenge a delegation clause in an arbitration agreement required a court to sustain a motion to compel arbitration so that formation disputes, including challenges to the delegation clause, could be decided by the arbitrator. *See Rent-A-Ctr.*, 561 U.S. at 71 ("[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate."). The United States Supreme Court recently clarified *Rent-A-Center*'s holding, however, in *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 537-38 (2019). In *New Prime*, the Supreme Court held that, prior to compelling arbitration, a court should decide whether there is a contract that falls within the boundaries of sections 1 and 2 of the Federal Arbitration Act (FAA). *Id.* at 538. It made this ruling in the context of deciding whether the FAA governed an employment contract that included an arbitration clause, because the FAA contains an exception for certain transportation employment contracts. *Id.* at 536. Its rulings in that context are equally applicable to this case and to the bedrock principle that contracts for arbitration are governed by the same principles of contract law that govern contracts generally. *Rent-A-Ctr.*, 561 U.S. at 67-68;

*State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798, 807 (Mo. banc 2015) ("A court determines the validity of an arbitration agreement by applying state contract law principles.").

In *New Prime*, the employer asserted that the delegation clause gave the arbitrator authority to decide even the initial question of whether the parties' dispute was subject to arbitration because the delegation clause was not challenged separately. 139 S. Ct. at 538. The opinion noted the employer also argued that *Rent-A-Center* required the Court to "treat a challenge to the validity of an arbitration agreement (or a delegation clause) separately from a challenge to the validity of the entire contract in which it appears." *Id.* The Court rejected that argument, however, holding it may use sections 3 and 4 of the FAA to enforce a delegation clause "only if the clause appears in a 'written provision in . . . a contract evidencing a transaction involving commerce." *Id.* (alteration in original). In concluding that the plaintiff's failure to challenge the delegation provision did not require the immediate enforcement of the provision, the Court explicitly held "that, before invoking the severability principle, a court should 'determine[] that the contract in question is within the coverage of the Arbitration Act.'" *Id.* (alteration in original) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402 (1967)).

The Supreme Court's holding in *New Prime* clarified that a court should not order arbitration until it has decided whether there is a contract evidencing a transaction involving commerce. This is no small point. *New Prime*, in its analysis and its result, teaches us that, even when a party has not specifically challenged a delegation provision, a court must determine the FAA's applicability and, consequently, its own authority to order the dispute to arbitration.

The dissenting opinions would have the Court put the cart before the horse and decide whether an arbitration provision appears in a contract without determining whether there is a contract in the first instance. To the contrary, a court is required to determine a contract exists and an agreement to arbitrate appears within its written provisions. This conclusion does not rest on a quote cherry-picked from *New Prime*. Instead, it gives full effect to the principle stated in *New Prime* and borne out in its result. There are "necessarily antecedent" inquiries a court must make before ordering a dispute to arbitration. *Id.* This principle requires courts to determine the existence of a contract that is within the coverage of the FAA and, therefore, requires this Court to affirm the circuit court's holding in this case.

_____
PATRICIA BRECKENRIDGE, JUDGE

4



# SUPREME COURT OF MISSOURI
## en banc

NINA THEROFF,                           )
                                        )
                    Respondent,         )
                                        )
v.                                      )        No. SC97235
                                        )
DOLLAR TREE STORES, INC.                )
AND JANIE HARPER,                       )
                                        )
                    Appellants.         )

### DISSENTING OPINION

I respectfully dissent. The mutual agreement's delegation provision "clearly and unmistakably evidences the parties' intent to delegate threshold issues of arbitrability to the arbitrator." *State ex rel. Pinkerton v. Fahnestock*, 531 S.W.3d 36, 48 (Mo. banc 2017). Theroff does not challenge the existence or validity of the delegation provision in the arbitration agreement. She challenges, rather, the formation of the larger arbitration agreement. "Disputes over the **formation** of the parties' arbitration agreement . . . have been considered threshold issues of arbitrability." *Pinkerton*, 531 S.W.3d at 43 (emphasis added). The circuit court, therefore, lacked authority to rule upon threshold issues of arbitrability, including disputes over the formation and enforceability of the arbitration

agreement as a whole. *Pinkerton*, 531 S.W.3d at 43; *Soars v. Easter Seals Midwest*, 563 S.W.3d 111, 114 (Mo. banc 2018); *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010). Accordingly, this Court should reverse the circuit court's order overruling Dollar Tree's motion to compel arbitration.

## A. Theroff did not specifically challenge the delegation provision

When a signed arbitration agreement containing a delegation provision is presented to the court in support of an application to compel arbitration, determining whether a party actually signed and assented to the agreement as a whole is beyond the scope of the court's authority. "The delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement." *Soars*, 563 S.W.3d at 114 (quoting *Rent-A-Ctr.*, 561 U.S. at 68). Delegation provisions are severable from the larger arbitration agreements containing them and, therefore, are "valid and enforceable unless a specific challenge is levied against the delegation provision." *Pinkerton*, 531 S.W.3d at 50. Accordingly, to avoid having threshold issues of arbitrability decided by the arbitrator, including disputes over the formation and enforceability of the arbitration agreement, a party must contest the validity of the delegation provision itself. *Id*. "Otherwise it is treated as valid and enforced — 'leaving any challenge to the validity of the [arbitration] [a]greement as a whole for the arbitrator.'" *Id*. (quoting *Rent-A-Ctr.*, 561 U.S. at 72).[1]

---

[1] The concurring opinion contends the circuit court, rather than the arbitrator, had authority to determine whether the parties formed an arbitration agreement, notwithstanding the unchallenged delegation provision, because the Federal Arbitration Act requires courts to first "determine[] that the contract in question is within the coverage of the Arbitration Act" before enforcing a delegation provision. Slip op. at 3 (quoting *New Prime, Inc. v.*

2

In the instant case, Dollar Tree presented the circuit court with an arbitration agreement, titled mutual agreement, bearing Theroff's electronic signature. The mutual agreement incorporated a delegation provision by reference.[2] While Theroff acknowledges in her briefing that the arbitration agreement presented to the circuit court incorporates a delegation provision, she makes no challenge specific to the delegation provision. Rather,

*Oliveira*, 139 S. Ct. 532, 538 (2019)). The concurring opinion presumes this inquiry necessarily requires the court to decide whether a contract exists or was properly formed. But the court's duty to first decide whether a contract falls within the FAA's purview is not so broad. Rather, the court's duty to first decide whether the contract at issue is one that falls under the coverage of the FAA requires only consideration of the subject matter of the contract at issue, not whether the contract exists or was formed. If the subject matter is such that it falls within one of the FAA's express exclusions, then the court may overrule a motion to compel arbitration and proceed to decide subsequent issues on the merits. But if the subject matter of the contract does not fall within an exception to the FAA, the court lacks authority to rule on threshold issues of arbitrability, including disputes over contract formation or existence, when the party opposed to arbitration did not specifically challenge the delegation provision.

Here, there is no question that the mutual agreement is within the coverage of the FAA. Section 2 of the FAA provides the FAA governs transactions "involving commerce." *New Prime, Inc.*, 139 S. Ct. at 537. Because Theroff's employment contract involves commerce, it falls within the coverage of section 2. Section 1 of the FAA exempts certain classes of transportation workers from coverage under the FAA. *See id*. at 536. Because Theroff is not part of the class of workers exempted from coverage under the FAA, "the contract in question is within the coverage of the Arbitration Act." *Id.* at 538.

Furthermore, Theroff never argued the mutual agreement fell outside the provisions of the FAA. A party on appeal "must stand or fall in this [C]ourt by the theory on which [s]he tried and submitted [her] case in the court below." *Walker v. Owen*, 79 Mo. 563, 568 (1883). "Under this general rule, issues that are not raised in the trial court are waived." *State v. Fassero*, 256 S.W.3d 109, 117 (Mo. banc 2008) (citing *Walker,* 79 Mo. at 568).

[2] The Mutual Agreement provided in pertinent part, "The arbitration shall be held in accordance with the then-current JAMS Employment Arbitration Rules & Procedures." When Theroff filed her claim, JAMS Rule 11(b) provided, in pertinent part, "Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator."

3

Theroff challenges the formation and enforceability of the mutual agreement as a whole. *See infra*, § B.

The principal opinion errs by holding Theroff's challenge to the mutual agreement as a whole necessarily challenges the delegation provision within it, *see* slip op. at 12, as that holding directly contradicts this Court's precedent. In *State ex rel. Newberry v. Jackson,* 575 S.W.3d 471, 476 (Mo. banc 2019), this Court held, "A party may not simply raise a challenge to the entire contract and then say the severed delegation clause within that contract is, therefore, also invalid." In *Pinkerton*, this Court held that, because the plaintiff did not mount a specific challenge to the delegation provision, "[t]his Court must, therefore, treat the delegation provision 'as valid under § 2 [of the FAA], and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the [a]greement as a whole,' or to other provisions within the arbitration agreement, 'for the arbitrator.'" 531 S.W.3d at 52-53 (alterations in original) (quoting *Rent-A-Ctr.*, 561 U.S. at 72). By holding Theroff's challenge to the mutual agreement as a whole also constitutes a challenge to the delegation provision, the principal opinion creates an irreconcilable conflict in this Court's arbitration jurisprudence.

What is more, this position, now adopted by the principal opinion, is nearly identical to the position this Court expressly rejected in *Soars*. In *Soars*, the plaintiff argued there was no delegation provision to enforce because the overall arbitration agreement, which included the delegation provision, lacked the essential elements of a contract and, therefore, no delegation provision existed. 563 S.W.3d at 115 & n.4. This Court, however, held the plaintiff could not avoid delegation of threshold issues of arbitrability precisely because he

4

"failed to direct any specific arguments to the delegation provision," *id*. at 115, and instead argued only that "both the delegation provision and the Agreement lack[ed] mutual obligations." *Id*. at 116.

In so holding, this Court rejected the exact argument now adopted by the principal opinion that a challenge to the formation and enforceability of an arbitration agreement as a whole for lack of an essential contract element, specifically the lack of mutual assent, necessarily also challenges the formation and enforceability of an agreement to delegate threshold issues of arbitrability. *Pinkerton*, *Soars*, and *Newberry* made it clear this is not the law.[3] The law, rather, is that delegation provisions are additional, severable arbitration agreements and, as such, must be treated as an additional written provision to settle a controversy by arbitration, including a controversy as to the formation and enforceability of the arbitration agreement as a whole. *Pinkerton*, 531 S.W.3d at 51; *Soars*, 563 S.W.3d at 114; *Newberry*, 575 S.W.3d at 476.

## B. Theroff did not challenge nor establish the mutual agreement did not exist

The principal opinion claims the record before the circuit court supports a finding that the mutual agreement and, therefore the delegation provision never existed because Theroff did not "see, read, know of, or assent to the arbitration agreement." Slip op. at 9.

---

[3] In fact, the court of appeals in *Soars* did exactly what the principal opinion does in this case. In *Soars*, the court of appeals held a party may challenge the validity of a delegation provision by either challenging the validity of the arbitration agreement as a whole or specifically challenging the validity of the delegation provision itself. This Court set aside the decision of the court of appeals by granting transfer and held the only way a party may avoid delegation of threshold issues of arbitrability to the arbitrator is by mounting a specific challenge to the delegation provision itself. 563 S.W.3d at 114.

5

But Theroff did not challenge "the existence of the agreement to arbitrate" pursuant to section 435.355(1), as Theroff acknowledges an arbitration agreement bearing her electronic signature exists. Instead, Theroff alleges Dollar Tree did not establish that she signed the mutual agreement or, in the alternative, that she was unaware and lacked knowledge of the agreement due to her blindness. These arguments, however, speak only to the agreement's formation and enforceability, not its existence. Because there is no challenge to the existence of the arbitration agreement, the circuit court had no authority to "proceed summarily to the determination of the issue so raised" pursuant to section 435.355(1).

Even if Theroff actually did challenge the existence of the mutual agreement, such a challenge is not supported by the evidentiary record. The principal opinion contends the circuit court's finding that no arbitration agreement existed was supported by the record because:

> [t]he circuit court could have believed Theroff's account that **she could not see the screen**, **was not able to view or read the arbitration agreement** on her own because she did not have the proper assistive device, or that **she did not know the arbitration agreement was included in the onboarding material** through which Swift verbally guided her.

Slip op. at 10 (emphasis added). But whether Theroff saw, read, or knew of the arbitration agreement due to her blindness has no bearing on the existence of the agreement, as Dollar

6

Tree presented a physical copy of the mutual agreement bearing Theroff's electronic signature to the circuit court in support of its motion to compel arbitration.[4]

Theroff's electronic signature on the arbitration agreement is prima facie evidence of the existence of a contract between Theroff and Dollar Tree. *See J.B. Colt Co. v. Gregor*, 44 S.W.2d 2, 6 (Mo. 1931); *see also Baier v. Darden Restaurants*, 420 S.W.3d 733, 738 (Mo. App. 2014) ("A party's signature on a contract remains the common, though not exclusive, method of demonstrating agreement.") (internal quotation omitted). Pursuant to that contract, which Theroff does not deny bears her electronic signature, the parties agreed to arbitrate threshold issues such as whether Theroff was actually the party who caused the signature to be affixed to the mutual agreement or whether the overall arbitration agreement otherwise lacked mutual assent. The answers to these questions speak only to the formation and enforceability of the agreement, not to the existence of an agreement.[5] "Disputes over

---

[4] The principal opinion ultimately hinges on the position that the circuit court could have found Theroff did not read the mutual agreement and such finding would constitute a defense to the contract's formation. *See* slip op. at 10. But it is well-established that a contract remains valid and enforceable even if one party did not see, read, or remember signing the agreement. *See Sanger v. Yellow Cab Co., Inc.*, 486 S.W.2d 477, 481 (Mo. banc 1972) (holding, in the absence of fraud, one's failure to read a contract before signing it does not relieve the signor from the obligations contained therein). This basic contract principle applies equally to arbitration agreements. *See Robinson v. Title Lenders, Inc.*, 364 S.W.3d 505, 509 (Mo. banc 2012) (finding arbitration provision of purchase agreement enforceable when the party "voluntarily signed it 13 times despite her admissions that she did not read or understand it"). Indeed, holding that the circuit court did not err in overruling Dollar Tree's motion to compel arbitration because Theroff lacked knowledge and awareness of the Agreement, "ignores longstanding Missouri contract principles and, instead, . . . adopt[s] . . . a standard that would have far-reaching consequences beyond interpretation of arbitration agreements." *Pinkerton*, 531 S.W.3d at 46.

[5] The principal opinion conflates the concept of "existence," as that term is used in section 435.355(1), with the concept of contract formation, validity, or enforceability. Section

7

the **formation** of the parties' arbitration agreement and its **enforceability** . . . have been considered threshold issues of arbitrability." *Pinkerton*, 531 S.W.3d at 43 (emphasis added). Because Theroff raises only threshold issues of arbitrability, and did not specifically challenge the incorporated delegation provision, any controversy as to the formation or enforceability of the mutual agreement must be delegated to the arbitrator. *Soars*, 563 S.W.3d at 114; *Pinkerton*, 531 S.W.3d at 51.

Dollar Tree presented the circuit court with an arbitration agreement containing a delegation provision bearing Theroff's electronic signature. Theroff did not specifically challenge the existence or validity of the delegation provision nor did she challenge the existence of the arbitration agreement as a whole, despite her characterization to the contrary. Rather, she challenged only the mutual agreement's formation and enforceability. Moreover, the evidentiary record does not support a finding that the mutual agreement did not exist. If any finding is supported by the record, it is that the mutual agreement lacked mutual assent, which speaks only to formation. *Pinkerton*, *Soars*, and *Newberry*, however, clearly teach that, unless the party seeking to avoid arbitration

---

435.355(1) does not supply a definition for the word "existence." When a term is not defined by statute, this Court will give the term its "plain and ordinary meaning as derived from the dictionary." *Mo. Pub. Serv. Comm'n v. Union Elec. Co.*, 552 S.W.3d 532, 541 (Mo. banc 2018). The dictionary defines "existence" to mean, in relevant part, an "actual or present occurrence." Webster's New Int'l Dictionary. 796 (3d ed. 2002). While the record may support a finding that Theroff did not see, read, or know of the arbitration agreement, it does not support a finding that there is no "actual or present occurrence" of an arbitration agreement bearing Theroff's electronic signature in the record. To the contrary, the record contains a physical copy of the signed mutual agreement. This is all that is required to prove "the existence of the agreement to arbitrate" under section 435.355(1).

specifically challenges the delegation provision, controversies as to the formation of the overall arbitration agreement must be delegated to the arbitrator. The circuit court, therefore, erred by proceeding to decide whether the mutual agreement was formed and enforceable and overruling Dollar Tree's motion to compel arbitration. This Court should reverse the circuit court's order and remand the case with instructions to stay further proceedings and order the parties to submit threshold issues of arbitrability to the arbitrator.

_____
W. Brent Powell, Judge


| | |
|---|---|
| NINA THEROFF, | ) |
| | ) |
| Respondent, | ) |
| | ) |
| v. | )     No. SC97235 |
| | ) |
| DOLLAR TREE STORES, INC. | ) |
| AND JANIE HARPER, | ) |
| | ) |
| Appellants. | ) |

### DISSENTING OPINION

I concur with the dissenting opinion of Judge Powell but write separately to address the principal opinion's asserted distinction between questions of a contract's "existence" or "conclusion" and questions of a contract's formation. Slip op. at 7-9. This flawed distinction entered this Court's precedent as dicta in *State ex rel. Pinkerton v. Fahnestock*, 531 S.W.3d 36, 49 (Mo. banc 2017), and derives from a piece of parenthetical dicta in *Granite Rock Co. v. International Brotherhood of Teamsters*, 561 U.S. 287, 296-97 (2010). The source of the throwaway *Granite Rock* parenthetical is *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006), reading:

> The issue of the contract's validity is different from the issue whether any agreement between the alleged obligor and obligee was ever concluded. ***Our opinion today addresses only the former, and does not speak to the issue decided in the cases cited by respondents*** (and by the Florida Supreme Court), which hold that it is for courts to decide whether the alleged obligor ever

signed the contract, whether the signor lacked authority to commit the alleged principal, and whether the signor lacked the mental capacity to assent.

(Emphasis added) (internal citations omitted).

The principal opinion is wholly incompatible with this Court's recent holdings in *Soars v. Easter Seals Midwest*, 563 S.W.3d 111 (Mo. banc 2018),[1] and *State ex rel. Newberry v. Jackson*, 575 S.W.3d 471 (Mo. banc 2019). And the source of this needless entanglement of Missouri arbitration law is a Supreme Court footnote that declines to address the very distinction on which the principal opinion hoists its entire opinion.

Even if the distinction existed, it would not apply to this case because the issue presented in this case is truly one of formation. In the words of the principal opinion, "the

---

[1] In *Soars*, this Court firmly reiterated "this Court's and the United States Supreme Court's holding that *a party must specifically challenge a delegation provision to avoid its application*." 563 S.W.3d at 116 (emphasis added). This rule is not subject to an exception when a party argues they never assented to the arbitration agreement. The assertion in the principal opinion that this is an issue of first impression is historically inaccurate. Slip op. at 7. The position taken by the principal opinion is identical to that advanced by the court of appeals in *Soars*, which this Court decidedly rejected by a 5-2 majority composed of Fischer, C.J., Wilson, Russell, Powell and Breckenridge, JJ. In its unpublished memorandum, the court of appeals in *Soars* reasoned:

> [T]he arbitration agreement between Easter Seals and Respondent was never "concluded" if there was no consideration, which is one of the three essential elements required for the formation of a contract. If the agreement was never concluded due to lack of consideration, *the entire arbitration agreement, including the delegation clause contained therein, fails as a matter of law due to the defect in formation. Therefore, Respondent's challenge to the formation of the arbitration agreement … required the court to address the issue prior to compelling arbitration*. … [W]hen a party to a purported arbitration agreement challenges the very existence of an agreement to delegate questions of arbitrability to the arbitrator, the party seeking to enforce the delegation clause bears the burden of establishing the three essential elements of any contract: offer, acceptance, and consideration. If any of these three elements is lacking *then, as a matter of law, the parties did not clearly and unmistakably agree to delegate anything to the arbitrator, let alone questions of arbitrability*.

(Emphasis added) (internal citations omitted). Despite the court of appeals memorandum having no precedential value, this Court granted transfer in *Soars* to expressly reject this line of reasoning. Nevertheless, the principal opinion has surprisingly adopted it.

2

issue here is whether the mutual agreement to arbitrate existed per section 435.355.1, *as Theroff asserts she did not assent to it*." Slip op. at 7 (emphasis added). Mutual assent, or "offer and acceptance," is "one of the basic elements of contract formation." *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 779 (Mo. banc 2014); *see also Gillen v. Bayfield*, 46 S.W.2d 571, 575 (Mo. banc 1931) (describing assent as "essential to the *formation* of the contract." (emphasis added)).

The delegation clause—which Theroff never specifically challenged—provides: "Jurisdictional and arbitrability disputes, *including disputes over the formation* … *of the agreement under which Arbitration is sought* … shall be submitted to and ruled on by the Arbitrator." (Emphasis added.) The issue raised by Theroff is one of contract formation, which is a "gateway question of arbitrability" that is properly delegated to the arbitrator. *Rent-A-Ctr., West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010).[2] By the delegation clause's plain terms, this is a matter for the arbitrator to decide.

_____
Zel M. Fischer, Judge

_____

[2] The concurring opinion written by Judge Breckenridge suggests the Supreme Court "clarified" *Rent-A-Center*'s holding in *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 537-38 (2019). Slip op. at 2 (Breckenridge, J., concurring). In *New Prime*, not surprisingly, the Supreme Court of the United States unanimously held the delegation clause in an arbitration agreement—signed by a class of workers expressly excluded from coverage under the Federal Arbitration Act ("FAA")—did not apply and need not be specifically challenged to prevent its enforcement, *because* the arbitration agreement and delegation clause "trigger[ed] § 1's contracts of employment exception." *Id*. at 538 (internal quotations omitted). Judge Breckenridge's concurring opinion cherry-picks a quote out of context to argue *New Prime* suggests a circuit court should conduct an antecedent inquiry into issues of formation before compelling arbitration pursuant to a delegation clause that was not specifically challenged. The quote in question, that "before invoking the severability principle, a court should determine that the contract in question is within the coverage of the Arbitration Act[,]", *id*. (quotation and alliteration omitted), is not in reference to challenges to a contract's formation but to contracts expressly excepted from the FAA by 9 U.S.C. § 1-2.

3